# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES KAPAR,**<br><br>Plaintiff,<br><br>v.<br><br>**ISLAMIC REPUBLIC OF IRAN, <u>et al.</u>,**<br><br>Defendants. | Case No. 02-cv-00078 (HHK) |

## <u>MEMORANDUM OPINION</u>

Charles Kapar was a passenger on a Kuwait Airways jet that was hijacked in 1984.  He sustained serious injuries when he was beaten and tortured during the hijacking.  In September 2004, the Court awarded Kapar a $13.5 million default judgment under 28 U.S.C. § 1605(a)(7)—the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act—on his claim against Iran and the Iranian Ministry of Information and Security for their role in the hijacking.  Iran and the Ministry have never entered an appearance in this case or paid any part of the judgment.  Kapar did, however, recover almost $2.2 million under the Victims of Violence and Trafficking Protection Act of 2002.  Mot. to Amend J. at 5 n.15.

In 2008, four years after Kapar received his judgment, Congress repealed Section 1605(a)(7) and replaced it with 28 U.S.C. § 1605A.  Section 1605A introduced a number of benefits for victims of state-sponsored terrorism, including a provision making it easier to execute judgments against foreign state assets.  In order to take advantage of these changes, Kapar now moves to amend his judgment pursuant to Rule 60(b)(5) and (6) of the Federal Rules of Civil Procedure.  He requests that his prior judgment be given effect as though it has been issued pursuant to Section 1605A.

The Court will deny the motion to amend the judgment. The D.C. Circuit has read Section 1605A to apply to claims originally brought under 28 U.S.C. § 1605(a)(7) only if such claims were pending, or were related to a case that was pending, when Section 1605A was passed. See Roeder v. Islamic Republic of Iran, 646 F.3d 56, 61 (D.C. Cir. 2011). Kapar acknowledges that his claim, which resulted in a final judgment four years prior to the passage of Section 1605A, does not qualify. He nevertheless seeks an amended judgment expanding his relief. Rule 60(b), however, cannot be used to circumvent Congress' express limitations on the effect of 28 U.S.C. § 1605A, at least absent extraordinary circumstances not present here. Kapar also requests an order under 28 U.S.C. § 1610(c) allowing him to attach Iranian assets to satisfy his original judgment. The Court finds that Kapar has met the requirements of that section and will issue an order accordingly.

**I.      Background**

Understanding Kapar's claim requires some background on former 28 U.S.C. § 1605(a)(7), the problems encountered by plaintiffs bringing suit under that provision, and Congress' response in Section 1605A. In 1996, Congress amended the Foreign Sovereign Immunities Act ("FSIA") to provide for the waiver of foreign sovereign immunity in claims brought against countries that the State Department had officially designated as state sponsors of terrorism. 28 U.S.C. § 1605(a)(7) (repealed). The so-called "state sponsor of terrorism" exception to the FSIA applied if the country was found to have provided "material support or resources" for terrorist acts. Id. As originally enacted, the statute did not make clear whether it merely granted jurisdiction over a foreign state or also created a private right of action against states or state officials. Congress attempted to clarify this ambiguity in 1997 by passing the Flatow Amendment, which provided that an "official, employee, or agent of a [designated state sponsor of terrorism]" shall be liable to U.S. citizens for injuries resulting from actions taken in

the scope of official duty. Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 589, 110 Stat. 3009–1, 3009–172 (1996) (codified at 28 U.S.C. § 1605 note).

Many victims of state-sponsored terrorism sought and received monetary awards under the Flatow Amendment, but a number of practical and legal obstacles made it difficult to collect on their judgments. First, the D.C. Circuit substantially limited the ability of plaintiffs to bring claims under the Flatow Amendment in Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024 (D.C. Cir. 2004). The court held that FSIA merely grants jurisdiction and that the Flatow Amendment added a private right of action only against officials, employees, and agents of a foreign state in their personal capacities, and not against the state itself or state officials in their official capacities. Id. at 1027–34. As a result of Cicippio-Puleo, many plaintiffs—including Kapar—began bringing claims under state tort law, using FSIA as a basis for jurisdiction. In re Islamic Republic of Iran Terrorism Litigation ("Iran Terrorism Litigation"), 659 F. Supp. 2d 31, 52–53 (D.D.C. 2009) (collecting cases).

For those plaintiffs who succeeded in obtaining state law judgments against Iran, a further difficulty arose in satisfying those judgments because property held by foreign sovereigns is generally immune from attachment and execution absent a waiver of foreign sovereign immunity. A complex interplay of statutes and executive orders also prevented what little property most foreign states have in United States from being attached. See generally id. at 49–55 (discussing the many hurdles faced by plaintiffs in enforcing judgments). Until 2008, the only exception was limited to "property relating to the commercial activities of the foreign sovereign." Id. at 52–53. As a result, most plaintiffs found it difficult or impossible to enforce judgments against Iran. See Eisenfeld v. Islamic Republic of Iran, 172 F. Supp. 2d 1, 9 (D.D.C. 2000).

In 2008, Congress repealed Section 1605(a)(7) through the passage of Section 1083 of the National Defense Appropriations Act ("NDAA"), and replaced it with 28 U.S.C. § 1605A. Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008). Although the scope of the waiver of foreign sovereign immunity is identical under both sections, Section 1605A provided a number of substantive rights and remedies that were previously unavailable to plaintiffs under Section 1065(a)(7). Two provisions are particularly relevant to this case. First, 28 U.S.C. § 1605A(c) creates an express cause of action against state sponsors of terrorism, effectively "abrogat[ing]" the D.C. Circuit's decision in Cicippio-Puleo. Gates v. Syrian Arab Republic, 646 F.3d 1, 3 (D.C. Cir. 2011). Second, Section 1605A facilitates satisfaction of judgments by making additional property of a state, agency, or instrumentality "subject to attachment in aid of execution, or execution, under [28 U.S.C. § 1610]." 28 U.S.C. § 1605A(g)(1).

Congress also allowed for application of Section 1605A to cases originally brought under Section 1605(a)(7) in two ways. First, NDAA § 1083(c)(2) provides that a claim brought under Section 1605(a)(7) that was "before the court[] in any form" at the time Section 1605A was enacted shall "be given effect as if the action had originally been filed under" the new section. NDAA § 1083(c)(2)(A). Second, NDAA § 1083(c)(3) provides that "[i]f an action arising out of an act or incident has been timely commenced under section 1605(a)(7) . . . , any other action arising out of the same act or incident may be brought under section 1605A." NDAA § 1083(c)(3). The D.C. Circuit has read this language "to refer only to those cases timely commenced under § 1605(a)(7) that were still pending when [Section 1605A] was passed." Roeder, 646 F.3d at 61. In either case the plaintiff must file his or her claim no later than 60 days after the entry of judgment on the prior or pending claim or the passage of 1605A, whichever is later. NDAA §§ 1083(c)(2)(C), (c)(3).

4

**II.      Legal Standard**

Kapar seeks relief under either Rule 60(b)(5) or 60(b)(6).  Rule 60(b)(5) authorizes the court to vacate or amend a judgment when "applying [the judgment] prospectively is no longer equitable."  Fed. R. Civ. P. 60(b)(5).  Rule 60(b)(6) is a catch-all provision that authorizes the court to amend a judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Decisions to grant or deny a motion under Rule 60(b) are left to the sound discretion of the district court and are reviewed for abuse of discretion.  Twelve John Does v. District of Columbia, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (reversing the district court's decision to grant a Rule 60(b) motion).  The moving party bears the burden of satisfying the requirements of Rule 60(b).  Id.

**III.     Analysis**

Kapar acknowledges that he is unable to file a new claim under either avenue in NDAA § 1083(c).  Mot. to Amend J. at 4–5.  He nonetheless argues that Congress' intent to facilitate the attachment of Iranian assets and the defendants' failure to satisfy the award justify modifying his judgment under either Rule 60(b)(5) or 60(b)(6).

   A.      Relief Under Rule 60(b)(5)

Rule 60(b)(5) allows a court to amend "any judgment that has prospective effect."  11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2863.  A judgment is "prospective" if it is either "executory" or involves "the supervision of changing conduct or conditions."  Twelve John Does, 841 F.2d at 1139.  The consensus among Courts of Appeal, including the D.C. Circuit, is that a claim for money damages is not "prospective" for the purposes of Rule 60(b)(5).  Id. at 1138; accord Marshall v. Board of Ed., Bergenfield, N.J., 575 F.2d 417, 425 (3d Cir. 1978) (collecting cases holding that Rule 60(b)(5) does not apply to judgments for money damages).

Kapar has not satisfied Rule 60(b)(5)'s requirement that his judgment have prospective application. His judgment is for damages stemming from past conduct—the opposite of prospective relief. The fact that most of the judgment remains unsatisfied does not mean the judgment involves "the supervision of changing conduct or conditions." Twelve John Does, 841 F.2d at 1139. In Twelve John Does, the D.C. Circuit recognized that almost every court order, even a claim for money damages, has some "reverberations into the future," especially if the judgment remains unsatisfied. Id. at 1138. The court nonetheless refused to find that a claim for damages constitutes "prospective application." Id. The same is true here. The possible future effects of Kapar's unsatisfied judgment do not authorize this Court to grant relief under Rule 60(b)(5).

B.   Relief Under Rule 60(b)(6)

The grounds for relief available under Rule 60(b)(6) are not limited to judgments with prospective effect. Relief under Rule 60(b)(6) does, however, require a showing of "extraordinary circumstances." Kramer v. Gates, 481 F.3d 788, 791 (D.C. Cir. 2007) (internal quotations removed). Extraordinary circumstances include "an adversary's failure to comply with a settlement agreement incorporated into a court's order[;] fraud by the 'party's own counsel, codefendant, or third-party witness[;]' or 'the losing party[''s failure] to receive notice of entry of judgment.'" More v. Lew, 34 F. Supp. 3d 23, 28 (D.D.C. 2014) (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2864). Particularly notable for present purposes, "[i]ntervening developments in the law by themselves rarely constitute extraordinary circumstances" under Rule 60(b)(6). Agostini v. Felton, 521 U.S. 203, 239 (1997); accord Acree v. Republic of Iraq, No. 08-5375, 2009 WL 1953503 (D.C. Cir. Feb. 17, 2009) (holding that a change in binding precedent after the D.C. Circuit had issued a final judgment did not warrant reconsideration under Rule 60(b)(6)). A motion under Rule 60(b)(6) also must be filed within a reasonable time.

"In this Circuit, courts almost uniformly deny Rule 60(b)(6) motions as untimely when they are filed more than three months after judgment." Carvajal v. Drug Enforcement Admin., 286 F.R.D. 23, 26 (D.D.C. 2012).

Kapar points to a number of factors that he argues constitute extraordinary circumstances sufficient to satisfy Rule 60(b)(6). First, he notes the unavailability of relief under NDAA § 1083(c), despite "Congress[ional] intent[] for Mr. Kapar, as a victim of a terrorist attack sponsored by the Islamic Republic of Iran, to be a beneficiary of the extended powers of § 1605A." Mot. to Amend J. at 4. Second, Kapar argues that if his judgment remains under 28 U.S.C. § 1605(a)(7), it is vulnerable to attack based on the D.C. Circuit's holding in Cicippio-Puleo that 28 U.S.C. § 1605(a)(7) and the Flatow Amendment do not create a cause of action against foreign states. Id. at 5–6. Although Kapar's judgment is based in part on District of Columbia common law, he asserts that a claim based on state law alone would foreclose the more generous collection opportunities available to other plaintiffs with judgments under 28 U.S.C. § 1605A. Id. at 6. And finally, Kapar emphasizes that he is not seeking a substantive change to his judgment to bring a new cause of action or to re-open prior proceedings that are final, and that defendants have been on notice of his claims since 2004. Id.

        i.        Intended Beneficiaries

Kapar's first argument—that he is precluded from seeking relief under the 2008 revisions despite being the "intended . . . beneficiary of the extended powers of § 1605A," Id. at 4—rests on a false premise. It is a "'well-established rule that the plain language of [a statute's] enacted text is the best indicator of intent.'" Utah v. Evans, 536 U.S. 452, 496 (2002) (quoting Nixon v. United States, 506 U.S. 224, 232 (1993)). Here, the statutory text provides for application of Section 1605A only if certain prerequisites are met, none of which Kapar satisfies. To say

7

Congress "intended" Kapar to be the beneficiary of Section 1605A would ignore the words that Congress actually used to express that intent.

Furthermore, Kapar's request is in considerable tension with the strong "presumption against statutory retroactivity." Landgraf v. USI Film Prods., 511 U.S. 244, 272 (1994). "Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988). Moreover, the reconsideration Kapar seeks would undermine the principal of judicial finality, and is therefore "an extraordinary remedy which should be used sparingly." United States v. Phillip Morris Inc., 130 F. Supp. 2d 96, 99 (D.D.C. 2001) (discussing a motion under Rule 59(e)). Here, not only does the language of 28 U.S.C. § 1605A and NDAA § 1083 not require retroactive application to Kapar's claim, they actually foreclose the availability of relief under their express terms.

Perhaps recognizing the limitations of the statute, Kapar directs the Court's attention to two cases from this district that discuss Rule 60(b) as a remedy for plaintiffs who cannot benefit from Section 1605A directly. In Iran Terrorism Litigation, Judge Lamberth penned a comprehensive opinion addressing whether multiple plaintiffs holding judgments against Iran under former Section 1605(a)(7) qualified for retroactive treatment under 28 U.S.C. § 1605A. The court noted that there was considerable confusion among plaintiffs' counsel regarding the application of NDAA § 1083(c)(2) and (3) to cases that were filed under Section 1605(a)(7). 659 F. Supp. 2d at 66. As a result of this confusion, many plaintiffs with judgments that otherwise would have been eligible for the advantages of NDAA § 1083(c) failed to follow the required procedures and missed the 60-day statute of limitations. Id. at 92–108. Due to NDAA § 1083(c)'s "lack of clarity" and a dearth of law on which plaintiffs' counsel could rely, the court suggested that Rule 60(b)(1)—which provides for relief based on "mistake, inadvertence,

surprise, or excusable neglect"—or Rule 60(b)(6) could potentially provide relief to plaintiffs who did not follow the appropriate procedures. Id. at 108–09. Judge Lamberth emphasized, however, that plaintiffs face a "significant burden" under Rule 60(b) and "must detail how their prior actions under § 1605(a)(7) would have fit within the framework established by [NDAA] § 1083(c) and therefore qualified for treatment under the new terrorism exception." Id. at 109.

Judge Lamberth's opinion provides no support to Kapar because he cannot explain how his judgment under 28 U.S.C. § 1605(a)(7) would have been aided by NDAA § 1083(c). Indeed, he concedes that he never qualified for relief under those provisions. Mot. to Amend J. at 4–5. And even if Kapar could demonstrate that his claim once qualified for relief under NDAA § 1083(c)(3), he does not explain why the Court should excuse missing the filing deadline by over six and a half years, nor does he argue that counsel labored under a good-faith misunderstanding of 28 U.S.C. § 1605A. Motions under Rule 60(b)(6) must be filed within a "reasonable time," and the D.C. Circuit has cautioned that Rule 60(b)(6) is not an opportunity for litigants to "take a mulligan." Kramer, 481 F.3d at 792. In short, none of the justifications that Judge Lamberth alluded to for Rule 60(b)(6) relief are present here.

Kapar also relies on Hegna v. Islamic Republic of Iran, in which the district court granted a motion by the relatives of a terrorism victim to treat their Section 1605(a)(7) judgment as though it were based on Section 1605A. Kapar argues that both he and Hegna were on the same hijacked plane and therefore their cases are factually similar. Mot. to Amend J. at 7. Hegna, however, is different in several relevant respects. First, the plaintiffs in Hegna initially relied on NDAA § 1083(c)(2) and the court assumed they met the 60-day filing deadline to bring a claim under that paragraph. Hegna v. Islamic Republic of Iran, No. 00-cv-716, 2010 WL 9498617 (D.D.C. Apr. 29, 2010). Here, on the other hand, Kapar specifically disclaims any reliance on

9

NDAA § 1083(c)(2) or (3), and did not meet the requirements of either section.[1]  Given the importance of the presumption against statutory retroactivity to ensure the finality of judgments and avoid separation of powers concerns, the Court will not expand the relief Congress granted beyond the express terms of the statute.

          ii.          Execution and Attachment

Victims like Kapar with awards under Section 1605(a)(7) may look to the "property in the United States of a foreign state . . . used for a commercial activity in the United States, . . . regardless of whether the property is or was involved with the act upon which the claim is based" in order to satisfy their judgments.  28 U.S.C. § 1610(a)(7).  Kapar could also attempt to collect from the Iranian Ministry of Information and Security if that agency were "engaged in commercial activity in the United States."  Id. § 1610(b).  In contrast, for awards under Section 1605A, the property of a foreign state, agency, or instrumentality available for attachment is not limited by any reference to "commercial activity."  28 U.S.C. § 1610(g).  Congress therefore made it much easier for Section 1605A plaintiffs to collect on their judgments, at least in theory.  Kapar also argues that the availability of the more flexible attachment provisions under Section 1605A constitutes an extraordinary circumstance that justifies modifying his judgment.

Unfortunately for Kapar, the D.C. Circuit has all but foreclosed his argument that Rule 60(b) provides a way for him to access the relief set forth in Section 1605A.  In Bakhtiar v. Islamic Republic of Iran, 668 F.3d 773, 774 (D.C. Cir. 2012), the plaintiffs missed the 60-day filing deadline to convert their pending Section 1605(a)(7) action against Iran into a claim under Section 1605A.  Following an award of $12 million in compensatory damages, the plaintiffs

---

[1] The court later decided that the Hegna plaintiffs could not bring a new claim under NDAA § 1083(c)(3).  Citing Roeder and concerns about *res judicata* and the separation of powers, it interpreted that paragraph only to authorize suits related to cases pending at the time of its passage.  Hegna v. Islamic Revolutionary Guard Corps, 908 F. Supp. 2d 116 (D.D.C. 2012).

10

moved under Rule 59 and Rule 60(b) to amend the judgment in order to seek punitive damages, which the district court denied. Id. at 775. On appeal, plaintiffs' primary contention was that "they were not required to comply with the procedures and time limits set forth by Congress in the 2008 law," because "Federal Rules of Civil Procedure 59 and 60 provide alternative means for them to seek punitive damages against foreign nations." Id. The D.C. Circuit disagreed, holding that "Rules 59 and 60 do not create additional options free from those statutory time limits" of Section 1605A and NDAA § 1083(c). Id. To hold otherwise, the court concluded, would be to render "the procedures and time limits established by Congress . . . largely meaningless." Id.

The only salient difference between Kapar's claim and the one rejected in Bakhtiar is that Kapar is seeking to increase the amount he can collect based on additional sources of property, while the Bakhtiar plaintiffs were aiming to increase their recovery through an award of punitive damages. Unfortunately for Kapar, the D.C. Circuit's concerns in Bakhtiar were not limited to reopening judgments to seek punitive damages. Rather, the court made clear that the statutory "options for obtaining the *benefits* of § 1605A *and* seeking punitive damages" are exclusive. Id. (emphasis added). Reference to Section 1605A in Section 1610(g)'s attachment provision is quite clearly a benefit provided by the law. Kapar's narrower attachment opportunities are not an extraordinary circumstance justifying a modified judgment, but rather a feature of the statute.

          iii.        Conduct of Defendants

Kapar next argues that modification of his judgment is justified because the defendants have known about his claims since 2004 and have taken no steps to seek relief from that judgment or pay the award. Mot. to Amend J. at 5–6. While this may be true, Iran's inaction does not justify relief under Rule 60(b)(6). Defendants similarly ignored the plaintiffs' judgment in Bakhtiar, which the D.C. Circuit refused to modify. Nor has Iran failed to comply with a

11

settlement agreement or engaged in fraud. More, 34 F. Supp. 3d at 28. As a result, Kapar has not made a showing of extraordinary circumstances sufficient to justify modifying his final judgment.

### C. Order for Attachment and Execution

Kapar has not yet sought to execute or attach any assets of Iran or the Ministry of Information and Security to satisfy his original judgment. Mot. to Amend J. at 7. Approximately $11.3 million of the judgment remains unpaid. In order to attach or execute upon any available property, he requires an order from the court under 28 U.S.C. § 1610(c). Before a court can issue that order, it has to determine "that a reasonable period of time has elapsed following the entry of judgment" and that "any notice required under section 1608(e)" has been given. Id. The Court agrees that both requirements have been met. Kapar was not able to serve Iran pursuant to any special arrangement or "applicable international convention." 28 U.S.C. §§ 1608(a)(1), (2); Mot. to Amend J. at 7–8. Upon his request, the court clerk attempted mail service in January 2008. 28 U.S.C. § 1608(a)(3); Certificate of Clerk, Jan. 28, 2008, ECF No. 25. Diplomatic service of the entry of judgment was finally completed in January 2009.[2] 28 U.S.C. § 1608(a)(4); Notice of Service, Jan. 23, 2009, ECF No. 27. Second, more than a decade has passed since judgment was first entered in Kapar's favor. Courts have found anywhere from six weeks, Ned Chartering & Trading, Inc. v. Republic of Pakistan, 130 F. Supp. 2d 64, 67 (D.D.C. 2001), to a year, Agudas Chasidei Chabad of U.S. v. Russian Fed'n, 798 F. Supp. 2d 260, 269 (D.D.C. 2011), to be a reasonable time since entry of judgment. Kapar has waited far

---

[2] Kapar originally served the complaint in the same manner—the American Embassy in Bern transmitted the documents to the Swiss Foreign Ministry, which sent them on to the Swiss Embassy, American Interest Section, in Tehran. The Swiss Embassy confirmed that the Iranian Ministry of Foreign Affairs returned the documents without comment. Return of Service & Affidavit, July 25, 2002, ECF No. 8.

longer than that, with no indication that defendants are taking any steps to pay the judgment. The Court will therefore issue an order under 28 U.S.C. § 1610(c) authorizing the attachment and execution of the uncollected portion of Kapar's original judgment.

### IV. Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion to Amend Judgment. An Order will accompany this Memorandum Opinion.

                                                    CHRISTOPHER R. COOPER
                                                  United States District Judge

Date: May 22, 2015